In re A.H. ROBINS COMPANY, INC., Debtor, Employer Tax Identification No. 54–0486348.

Mary WILLIAMS, Movant,

v.

DALKON SHIELD CLAIMANTS TRUST, Respondent.

No. 84–01307–R.

United States District Court, E.D. Virginia, Richmond Division.

Feb. 15, 1994.

Monty L. Preiser, Preiser Law Firm, Charleston, West Virginia, for Mary Williams.

Orran Lee Brown, Richmond, Virginia, for Dalkon Shield Claimants Trust.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on motion by Dalkon Shield Claimant Mary Williams, DS–159245, to interpret the A.H. Robins Reorganization Plan ("Plan"). Williams has accepted an Option 3 offer by the Dalkon Shield Claimants Trust ("Trust") in full compensation of her Dalkon Shield related injuries. She now seeks to bring a state medical malpractice action based on her Dalkon Shield related injuries against a clinic and several doctors. She asks this Court to exercise its exclusive power to interpret the Plan and to issue an order permitting her to bring the malpractice action in West Virginia. For reasons given below, this Court denies Movant the permission she seeks.

In 1982 Williams filed suit against A.H. Robins in the United States District Court for the Northern District of West Virginia based on her Dalkon Shield related injuries, and subsequently filed a claim in the A.H. Robins bankruptcy. She elected to proceed under Option 3 of the Claims Resolution Facility and accepted the Trust's offer of settlement. On January 17, 1992, Williams signed a General Release of Claims accepting the settlement payment "as full compensation of my claim" and releasing all persons from claims arising from the Dalkon Shield. General Release of Claims, executed by Mary E. Williams on Dec. 20, 1991, found at Response by Dalkon Shield Claimants Trust to Motion, exhibit C.

In 1982 when Williams filed her original suit against A.H. Robins, she also filed a suit in West Virginia state court against her doctors and a clinic seeking compensation for

Dalkon Shield related injuries.[1] *Williams v. Leibold,* No. 82–C–453N (W.Va.Cir. Marshall Co., Dec. 26, 1991). By Order entered March 16, 1987, this Court enjoined Williams from proceeding in that suit. On the basis of this Court's order, the West Virginia court dismissed Williams' suit on December 26, 1991. In the interim, this Court confirmed the Plan. Both the Plan and the Confirmation Order enjoined suits against all persons based on Dalkon Shield-related injuries. Debtor's Sixth Amended and Restated Plan of Reorganization of A.H. Robins Company (*Plan*), § 8.04; Confirmation Order ¶ 34, Jul. 26, 1988. The United States Court of Appeals for the Fourth Circuit approved the Plan and Confirmation Order, and the Supreme Court denied certiorari. *In re A.H. Robins Co.,* 88 B.R. 742 (Bankr.E.D.Va.1988), *aff'd,* 880 F.2d 694 (4th Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989).

On January 27, 1992, Williams moved the West Virginia Circuit Court to reinstate her suit against the clinic and doctors. Upon learning of this motion many months later, the Trust initiated contact with Williams' attorney, Monty L. Preiser, in an attempt to forestall further action on the suit. After protracted correspondence[2] between the Trust and Preiser, Preiser consented to a stay of the West Virginia suit, entered on September 8, 1993. *See* Letters and Order found at Response by Dalkon Shield Claimants Trust to Motion, exhibit M.

 Williams moves this Court to interpret the Plan and issue an order allowing her to proceed with her West Virginia suit so long as that suit does not interfere with the Trust. Movant argues that the Trust would not be affected by her suit, contending that West Virginia courts can bar third party suits, and hence the West Virginia court could bar the defendants from seeking indemnity or contribution from the Trust. Should the West Virginia court decline to bar third-party suits against the Trust, Movant represents that she would dismiss her suit. Movant offers no law in support of her motion. ·

The Trust opposes the motion, arguing that (1) Williams' claims in the West Virginia suit are released under the Plan and therefore enjoined; and (2) Williams accepted the Trust settlement payment in full compensation for her Dalkon Shield-related injuries and released all persons from any claim based on those injuries.

 Section 8.03 of the Plan and paragraph 33 of the Confirmation Order release all persons from all liability related to the Dalkon Shield, except for liability based on Unreleased Claims. An Unreleased Claim is one which is based solely on medical malpractice and which cannot be asserted against the Trust. *Plan* § 1.85; *In re A.H. Robins Co. (Dalkon Shield Claimants Trust v. Reiser),* 972 F.2d 77, 81 (4th Cir.1992).[3] An Unreleased Claim is one in which "the Dalkon Shield played a significant role in the resulting injury but in no way *caused* the injury." *Reiser,* 972 F.2d at 81 (emphasis in original). A claim is not an Unreleased Claim if "the injury may have been partially or wholly caused by a design or manufacturing defect in the Shield, and thus subject to compensation by one of the Trusts." *Id.* It is beyond dispute that Williams' claims was both subject to compensation by, and actually compensated by, the Trust. Williams' Dal-

---

1. In her West Virginia suit Williams alleges that the various defendants were negligent in inserting her Dalkon Shield, in failing to warn of its hazards, in failing to recommend its removal, and in improperly treating her for subsequent infections and complications. Complaint, *Williams v. Leibold,* No. 82–C–453W (W.Va.Cir. Marshall Co., Dec. 26, 1991), found at Response by Dalkon Shield Claimants Trust to Motion, exhibit A.

2. This Court notes with concern and disapproval that some of the language in Preiser's letters to the Trust is at best disrespectful and at worst abusive. This Court requires all counsel appearing before it to conduct themselves in a manner befitting officers of the Court.

3. The United States Court of Appeals for the Fourth Circuit has not issued a mandate in the *Reiser* appeal. Defendant–Appellant Reiser filed a petition for rehearing on August 21, 1992, which the court is treating as a petition for clarification. *See* Order of Nov. 16, 1992, *In re A.H. Robins Co. (Dalkon Shield Claimants Trust v. Reiser),* No. 91–1195, Aug. 7, 1992. The matter remains pending before the court of appeals.

kon Shield-related claims are not Unreleased Claims.

Section 8.04 of the Plan and paragraph 34 of the Confirmation Order permanently enjoins all litigation against any person based on Dalkon Shield-related claims, except for Unreleased Claims. In addition, this Court has not vacated its Order of March 16, 1987, specifically enjoining Williams from proceeding in her West Virginia state court action. Williams is enjoined from proceeding with her West Virginia suit.

The release which Williams signed in accepting settlement payment from the Trust states that "I accept payment of the Settlement amount as full settlement of my claim.... In consideration of the payment of the Settlement Amount, I hereby fully release, waive and discharge all rights or claims of any nature, whether based upon tort, fraud, contract or otherwise, which I now possess or may later possess ... based upon or in any manner arising from or relating to (1) the Dalkon Shield." General Release of Claims, executed by Mary E. Williams on Dec. 20, 1991, found at Response by Dalkon Shield Claimants Trust to Motion, exhibit C. Williams plainly has accepted full compensation for her Dalkon Shield-related injuries and has released all claims against all other persons arising from or relating to the Dalkon Shield.

■ Movant asks this Court to interpret the plan so as to except her from the injunction against pursuing released claims. Her theory is that so long as the Trust is at no risk of further monetary liability, the injunction is without purpose. Her theory is wrong.

The fundamental purpose of the Plan and its blanket injunction was to bring *all* Dalkon Shield-related claims to one forum for an initial attempt at satisfaction through the Claims Resolution Process. The beneficiaries of this single-forum process were not only the persons with Dalkon Shield-related injuries, but also the medical care providers who might be liable for those injuries. The Plan includes such medical care providers in the class of "Other Claimants," who are "any Person other than a Personal Injury Claimant who asserts a Dalkon Shield Claim, in-

cluding, without limitation, ... doctors, hospitals, other health care professionals, and other health care facilities and providers." *Plan* § 1.63. The Plan states that Other Claimants "shall be entitled to and shall be beneficiaries of the releases and injunctions provided for in Sections 8.03 and 8.04 of the Plan." *Id.* §§ 5.02, 3.04.

A clear and unambiguous purpose of the Plan was to bar suits against health care providers for Dalkon Shield-related injuries. Any claim that could be asserted against the Trust, must be asserted against the Trust and only the Trust. The efficacy of this requirement is evident. It avoids the lengthy and expensive process of litigation against a doctor, who would then bring a third-party claim against the bankruptcy debtor or one of its successor trusts. Therefore, granting Movant relief from the effect of her release and from this Court's injunction would be contrary to a principal purpose of the Plan.

Further, granting such relief would be manifestly unfair in a case such as this, in which the Other Claimant has no recourse to the bankruptcy debtor or any successor trust for indemnity or contribution. The Trust paid Movant an amount that she has sworn was full compensation for her Dalkon Shield-related injuries—the Trust will pay no more. In a twist of logic, Movant argues that the defendants' lack of recourse, in the form of a state court bar on third-party claims, is the very basis which justifies excepting her from the injunction so that she can seek *more* than full compensation. This Court does not agree.

Movant has received full compensation for her Dalkon Shield-related injuries and is enjoined from pursuing any claim related to those injuries in any court.